BENEVOLENT ASS'N OF THE PAID FIRE DEPARTMENT OF CHICAGO

*v.*

JOHN A. FARWELL, Comptroller, etc.

*Filed at Ottawa September 26, 1881.*

1. DISABLED FIREMEN AND POLICEMEN—*as to the management of the fund created by law for their benefit*—"*Benevolent Association of the Paid Fire Department of Chicago*." The various provisions in the charter of the city of Chicago, and amendments thereto, for the setting apart a portion of the fire insurance rates annually received by the city, and the act of March 5, 1867, creating the Benevolent Association of the Paid Fire Department of Chicago, and giving it the management of the fund arising from such source, etc., if not otherwise repealed before that time, have all been superseded by the act of May 24, 1877, entitled "An act for the relief of disabled members of the police and fire departments in cities and villages," which was intended as a revision of all the statutes on that subject.

2. This association never had a vested right to the fund, which, by a clause in its charter, was directed to be paid over to it by the comptroller of the city. As to that fund, this corporation was merely created or selected as a public functionary to manage and apply the same, and it was liable to be cut off or changed at the will of the State.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. EGBERT JAMIESON, and Mr. W. C. GOUDY, for the appellant:

As said by the Appellate Court when the case was first before it, the questions presented are:

*First*—Whether the law requiring the moneys in question to be paid to the petitioner has been repealed by subsequent legislation; and

*Second*—Whether the petitioner obtained by its charter a vested right to receive said moneys which is irrepealable, and which the legislature has no power to divest.

The provisions of the revised charter of 1863 were not repealed by section 30 of the act of March 10, 1869. See *Van Inwagen* v. *City of Chicago*, 61 Ill. 31.

The law does not favor repeals by implication. *Town of Ottawa* v. *LaSalle County*, 12 Ill. 341; Dwarris on Statutes, 673; *Bowen* v. *Lease*, 5 Hill, 221; *Bruce* v. *Schuyler*, 4 Gilm. 221; *Kinney* v. *Mallery*, 3 Ala. 626; *Planters' Bank* v. *State*, 6 Sme. & M. 628.

Section 3 of the petitioner's charter, act of 1867, was not repealed, directly nor by implication, by the act of 1877. The first was and is a special local act, and could not, by implication, be repealed by the general act of May 24, 1877, which is a general law. Dwarris on Statutes, 674; 4 Pike, 410; *Town of Ottawa* v. *LaSalle County*, 12 Ill. 341.

The legislature could not repeal or amend the act of 1867 without the consent of the corporation, which is a private one. See *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *Washington University* v. *Rouse*, id. 439; *Bouffett* v. *Great Western R. R. Co.*, 25 Ill. 355.

Mr. FRANCIS ADAMS, for the appellee, after stating the case, made the following points:

1.   Section 5, chapter 8, of the act of 1863, was repealed by section 30 of the act of March 11, 1869, in relation to insurance companies. *Van Inwagen* v. *City of Chicago*, 61 Ill. 31.

2.   If not so repealed, it is repealed by section 110 of the general law for the incorporation of cities and villages, which is a revision of the whole subject matter of the section in the act of 1863, and was intended as a substitute for all prior laws on the subject as to cities organized under the general law.   Sedgwick on Const. Stat. and Const. Law, 104; *Illinois and Michigan Canal* v. *City of Chicago*, 14 Ill. 334; *Culver* v. *Third National Bank*, 64 id. 534; *Andrews* v. *People*, 75 id. 613; *Devine* v. *Board, etc. of Cook County*, 84 id. 590.

3.   Section 3 of appellant's charter was repealed by the act for the relief of disabled members of the police and fire departments in cities and villages. (Hurd's Stat. 1877, p. 239.)

4.   Section 3 of appellant's charter is not a contract, within the meaning of the constitution of the United States or of this State.   *Fireman's Benevolent Association* v. *Launsbury*, 21 Ill. 515.

The money derived as license fees from foreign insurance companies is public revenue of the city, and as such is subject to legislative control.   *County of Pike* v. *State*, 11 Ill. 202; *County of Richland* v. *County of Lawrence*, 12 id. 1; *People* v. *Power*, 25 id. 187; *Board of Supervisors* v. *City of Springfield*, 63 id. 66.

This is equally true of the revenue of incorporated cities, which are but subordinate departments of government of the State.   1 Dillon on Mun. Corp. sec. 35; *Gretzweller* v. *People*, 14 Ill. 142; *People* v. *Mayor, etc. of Chicago*, 51 id. 31.

This is a power which can not be abridged or bartered away by legislative enactment.   Cooley on Const. Lim. 206, 283; *Thorpe* v. *R. and B. R. R. Co.* 27 Vt. 149; *Dingman* v. *People*, 51 Ill. 277.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is a petition for *mandamus*, filed in the circuit court of Cook county, by appellant against the comptroller of the city of Chicago, to compel him to pay over to petitioner one-

eighth of the amount of all fire insurance rates which had been paid into the city treasury after the act of May 24, 1877, came into force, entitled "An act for the relief of disabled members of the police and fire departments in cities and villages." A demurrer was sustained to the petition by the circuit court, and judgment rendered thereupon against the petitioner. This judgment was, on appeal, affirmed by the Appellate Court for the First District, and the petitioner appeals from that judgment to this court.

By the old charter of Chicago, enacted in 1863, all foreign fire insurance companies doing business in the city were required to pay into the city treasury, semi-annually, two per cent "upon the amount of all premiums which," in the preceding half year, had been received, or had "been agreed to be effected in said city," by such companies, respectively; and moneys so received were to be used only for the promotion of the efficiency of the fire department, and for providing a fund for the relief of disabled firemen; and one-eighth of all fire insurance rates annually received by the city was to be set apart as a fund for the relief of such disabled firemen, to be disbursed under such regulations as the council might prescribe.

On March 5, 1867, an act was passed constituting "all such persons as now are, or hereafter may become, members of the Benevolent Association of the Paid Fire Department of Chicago, in accordance with the constitution and by-laws thereof, a body corporate, with power to prescribe for the management of its affairs and the disposition of its funds such constitution and by-laws as might seem proper and needful for the purposes of the incorporation;" and that act declared the object of the corporation to be to create a fund and provide means for the relief of distressed, sick, injured and disabled *members thereof* and their immediate families— such fund to be managed by the association, and disbursed for that purpose only; and it was further provided, that "the

one-eighth of the amount of all fire rates now annually paid into the city treasury  *  *  *  shall annually be paid by the comptroller of the city to the association, to be held and invested by them as a trust fund for the benefit of firemen who shall or may become disabled while in the service of the city."

It is upon these provisions of the statutes of 1863 and of 1867 that appellant rests its alleged rights sought to be enforced in this proceeding.

In behalf of the appellee it is contended that the statutes in question have been repealed. The contention is, that the provisions of the act of 1863 were repealed by section 30 of the general law in relation to insurance companies, passed March 11, 1869, and if not repealed by the act of 1869, the provisions became inoperative in Chicago in 1875, when the city was reorganized under the general law of 1872 as to "cities and villages," by reason of section 110 of that act; and lastly, counsel for the city insists that even if the provisions of the old charter in this regard remained unaffected by the acts of 1869 and 1872, still the rights asserted by the petitioner were *terminated* by the act of May 24, 1877, entitled "An act for the relief of disabled members of the police and fire departments in cities and villages." (Laws 1877, p. 62.)

In this latter position, taken by counsel for appellee, we concur. Assuming, as claimed by appellant, that the act of 1869 was intended to provide for merely general taxation (for State, county and municipal purposes, at the rate at which personal property was taxed for such purposes,) of two per cent upon the local net *receipts* of foreign fire insurance companies; and that in cities having an organized fire department, such companies were to remain bound by law to contribute also a special amount for the promotion of the efficiency of the fire department, at the rate and in the mode required in each charter imposing that burden; and assuming,

as claimed by appellant, that section 110 of the City act of 1872 is to be treated as a mere amendment of the charter of 1863, affecting only the *amount* to be paid,—still we can not avoid the conclusion that the act of 1877 was intended as a revision of all statutes on that subject, and as a complete substitute for all former laws on that subject. If so, they all ceased to have force when the substitute came into force.

. If the petitioner's views are sound, at and before the passage of the act of May 24, 1877, foreign insurance companies doing business in Chicago were liable to *taxation* (as upon personal property) upon the amount of the *net receipts* at their agencies in Chicago, no matter whether such receipts arose from premiums, or from interest on money loaned, or from any other source, and were also liable to contribute, in addition, two per cent annually on these same "net receipts," and also two per cent upon the amount of all premiums received or agreed to be effected,—the latter being not strictly taxation, but demanded by law as a just contribution to a special fund, which was to be appropriated exclusively to the object of promoting the efficiency of the fire department, in which fire insurance companies had a special interest; and if petitioner's views are right, one-eighth of the fund arising from the latter class of contributions was by law to be paid over to the petitioner, for the mere purpose of application to one means of rendering efficient the fire department. No share of taxes proper, paid in by such companies, was at that time applicable by law specially to the fire department of any city.

Now, the act of May 24, 1877, sets apart not only the one-eighth of this fund (which in Chicago was administered by this corporation), but one-fourth of the same, and also one-fourth of the *taxes* which are or may hereafter be required by law to be paid by all foreign fire insurance companies, and also one-fourth of all *fines* inflicted upon firemen or policemen, and also one-fourth of all moneys received by the

city as *fines* for violation of *fire ordinances*, and also of all moneys arising from sale of unclaimed stolen property, as a general fund for disabled members of the police and fire departments, and places the control of this *entire* fund in the custody of a board of public officers, to be applied to the relief of disabled firemen and policemen; to which fund is to be added a contribution of five dollars annually from each policeman and fireman.

When we consider the object and purposes of the provisions of the old charter of Chicago, and of the act of 1872, and the object of the clause in the charter of this association, giving it the management of the fund in question, and at the same time examine the provisions of this act of May 24, 1877, we are fully satisfied the latter was intended to supersede and take the place of the former.

There is no force in the suggestion that this association has a vested right to the fund, which, by one clause in its charter, was directed to be paid over to it by the comptroller. As to that fund, this corporation was merely created or selected as a public functionary to manage and apply the same. This is manifest from the nature of the provisions and from the phraseology of the act. The moneys to be paid were designated as a portion of certain "insurance rates, now annually paid into the city treasury," for a given purpose. The use of the word "*now*" shows clearly that this fund was liable to be cut off or changed at the will of the State, and that there was no undertaking on the part of the State that this arrangement should not be changed.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*